**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| GERARDO ARTURO GONZALEZ, | No. ED CV 17-2443-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 5, 2017, seeking review of the Commissioner's[1] denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on January 10, 2018, and January 11, 2018.

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on August 28, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on February 25, 1976. [Administrative Record ("AR") at 27, 175.] He has no past relevant work experience. [AR at 28, 69.]

On December 5, 2014, plaintiff protectively filed an application for SSI payments, alleging that he has been unable to work since January 1, 2006. [AR at 18; see also AR at 175-80.] The alleged onset date was amended at the hearing to be December 5, 2014, the date the application was filed. [AR at 18, 40-41.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 123, 124-26.] A video hearing was held on February 14, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 36-77.] A vocational expert ("VE") also testified. [AR at 68-74.] On April 19, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability since December 5, 2014, the date the application was filed. [AR at 18-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 172-74.] When the Appeals Council denied plaintiff's request for review on October 31, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

1  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 5, 2014, the application date. [AR at 20.] At step two, the ALJ concluded that plaintiff has the severe impairments of mild disc desiccation at C4-C5; moderate disc desiccation at C5-C6; and lumbar spinal stenosis with spondylolisthesis at L4-L5, status post-surgery for posterior lumbar interbody fusion at L4-L5 on April 10, 2015. [Id.] He also found that plaintiff's medically determinable physical impairments of mild scoliosis, a hepatitis C virus infection, enlarged

prostate, and insomnia were non-severe. [AR at 21.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. § 416.967(a),[3] as follows:

> He can lift, carry, push, and/or pull 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for at least two hours in an eight-hour workday; and sit for about six hours in an eight-hour workday, with normal breaks.

[AR at 21-22.] At step four, the ALJ concluded that plaintiff had no past relevant work. [AR at 27, 69.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "document specialist" (Dictionary of Occupational Titles ("DOT") No. 249.587-018), as an "order clerk" (DOT No. 209.567-014), and as an "interviewer" (DOT No. 205.367-014). [AR at 28-29.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since December 5, 2014, the date the application was filed. [AR at 29.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) failed to provide clear and convincing reasons for discounting plaintiff's subjective symptom testimony; (2) rejected the opinions of treating physician Mario M. Luna, M.D.; and (3) failed to develop the post-surgical record. [JS at

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a), 416.967(a).

2.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.      SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 23-26, 32-33.]

The ALJ generally summarized plaintiff's subjective symptom testimony as follows:

> In the [*Function Report -- Adult*], [plaintiff] asserted that he could not work due to "constant pain." He alleged that he was unable to lift heavy objects; sit, stand, or walk for long periods; climb stairs; and perform postural movements. Difficulties with task completion were also reported. . . .
>
> At the hearing, [he] testified that he was unable to work primarily due to chronic neck and back pain. He stated that he relies on his girlfriend for financial support and "watches TV all day, every day." [He] reported that he was unable to prepare meals or perform most household chores. He indicated that he lives with his minor children, but asserted that his girlfriend is responsible for driving them to school. [He] testified that he has been unable to ambulate effectively since undergoing spinal surgery. He stated that he could walk for no more than 15 minutes at one time. [He] indicated that he could sit for no more than 10 minutes at one time. He acknowledged that he could independently feed himself and lift a gallon of milk.

[AR at 22-23 (citations omitted).]

The ALJ discounted plaintiff's subjective symptom testimony as follows:

> The undersigned notes that there are some inconsistencies between [plaintiff's] allegations and his self-reported daily activities. Specifically, while [he] has alleged that he is limited in his ability to work at any exertional level, the record reflects that he can perform at least some activities of daily living, such as feeding his fish every morning. [He] has also indicated that he can perform some multi-step tasks, such as counting change and handling a savings account. Finally, [he] has stated that he has regular interaction with his mother. He testified that he resides with his girlfriend and minor children. The undersigned finds [plaintiff's] ability to perform the aforementioned daily activities to be inconsistent with his allegation that he is unable to perform tasks at any exertional level.
>
> The Administrative Law Judge further finds [plaintiff's] assertion that he is unable to work to be inconsistent with the relevant medical evidence of record, including reports documenting that he can ambulate effectively with a nonantalgic gait and postsurgical x-rays showing satisfactory alignment of the spine with intact hardware. Taken as a whole, these records do not comport with [plaintiff's] reported functional limitations.

[AR at 23 (citations omitted).]

On March 28, 2016, prior to the ALJ's assessment in this case, Social Security Ruling

("SSR")[4] 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test,

---

[4] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102.

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 22-27], the ALJ's reasons for rejecting a claimant's credibility[5] must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In this case, in discounting plaintiff's testimony, the ALJ found the following: (1) plaintiff's subjective complaints were not supported by the objective evidence; and (2) there were "inconsistencies between [plaintiff's] allegations and his self-reported daily activities." [AR at 23.]

---

[5] While SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

8

### 1. Objective Evidence

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the <u>only</u> basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ found that plaintiff's allegations were inconsistent with the objective medical record, which reflected plaintiff "can ambulate effectively with a nonantalgic gait," and post-surgical x-rays showed "satisfactory alignment of the spine with intact hardware." [AR at 23 (citing AR at 354, 383).] The ALJ's findng that plaintiff ambulated with a nonantalgic gait at two treatment visits,[6] and that the post-surgical x-rays showed that his spine was satisfactorily aligned with intact hardware, however, does not "*identify* the *testimony* that [is being discounted], and *specify* 'what evidence undermines the claimant's complaints,'" thereby "link[ing] that testimony to the particular

---

[6] The ALJ cited to two records reflecting a nonantalgic gait: a March 30, 2015, treatment note, which also reflected that (notwithstanding plaintiff's nonantalgic gait) L4-L5 posterior lumbar decompression and fusion surgery was scheduled (and actually performed ten days later) [AR at 354, 355], and a July 1, 2015, note, 2.5 months post-surgery, reflecting that plaintiff's gait was nonantalgic. [AR at 383.] As noted by plaintiff, however, there are ample records that reflect that plaintiff's gait *was* antalgic, including the March 9, 2015, report of the consultative examiner, Haleh Safavi, M.D. [JS at 5 (citing AR at 329), 13 (citing AR at 586, 591, 599, 603, 615, 618, 623, 626, 706, 781, 795, 803); see also AR at 708.] Whether plaintiff's gait was antalgic or nonantalgic, however, the ALJ failed to show how this symptom was inconsistent with plaintiff's subjective symptom testimony.

parts of the record" supporting the ALJ's determination. Brown-Hunter, 806 F.3d at 493, 494; Treichler, 775 F.3d at 1103 (citation omitted) (emphasis added). That is, the ALJ provided no evidence showing that either an occasional nonantalgic gait, or the alignment of the spine with the hardware placed during surgery, was inconsistent with any of the symptoms and/or limitations reported by plaintiff. Thus, the ALJ did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony []he found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

This was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony. In any event, even if it was a clear and convincing reason, this reason alone would not be enough to support the ALJ's decision since the ALJ's other ground for discounting plaintiff's testimony, as discussed below, fails.

### 2. Daily Activities

The ALJ found that there were inconsistencies between plaintiff's allegations "and his self-reported daily activities." [AR at 23.] By way of evidence, the ALJ stated that plaintiff can perform "at least some activities of daily living, such as feeding his fish every morning," he can perform multi-step tasks as evidenced by his abilities to count change and handle a savings account, and he regularly interacts with his mother. [Id. (citations omitted).] The ALJ concluded that plaintiff's ability to perform these daily activities is "inconsistent with his allegation that he is unable to perform tasks at any exertional level." [Id.]

Plaintiff contends that these reasons for discrediting his subjective symptom testimony "fail to meet the relevant standard," and are "unsupported by substantial evidence." [JS at 23.] Defendant responds that in discussing the inconsistencies between plaintiff's testimony and his

daily activities (of feeding fish every morning, "handling money and visiting with his mother twice a month"), "the ALJ was mindful that Plaintiff claimed he was unable to perform *any* tasks at *any* exertional level." [JS at 30.] Defendant also suggests that the ALJ found that plaintiff was exaggerating his claims.[7] [JS at 26.] Defendant submits that "[o]ther inconsistencies abound," including the fact that plaintiff "reported that he was unable to drive since the surgery due to physical limitations and drowsiness, but the record shows he did not have a driver's license"; he claimed that he "vomits 1-2 times a week and has lost 70 pounds, but the record shows a high weight of 197 . . . and a low weight of 163 pounds"; and plaintiff "has been taking Percocet and Morphine for years, and he attributed the weight loss to these medications and poor eating habits." [JS at 31 (citations omitted).] However, to the extent these "inconsistencies" are any more clear and convincing than the ones suggested by the ALJ (discussed below) -- which they are not -- they were not reasons given by the ALJ for discounting plaintiff's subjective symptom testimony. "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for rejecting plaintiff's testimony that were not given by the ALJ in the decision. See Trevizo, 871 F.3d at 677 & nn.2, 4 (citation omitted).

An ALJ may discredit testimony when plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating

---

[7] For some inexplicable reason, defendant noted that plaintiff has "spent most of his life incarcerated," and further reported that his "head, face, arms and torso were heavily tattooed." [JS at 26.] Defendant did not provide the Court with any explanation as to why these facts were relevant to the discussion and the Court finds that they are not, in fact, relevant.

11

impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014)).

Here, with respect to the ALJ's reasoning that plaintiff's subjective symptom allegations are inconsistent with his self-reported daily activities, the Court is hard-pressed to find *any* aspect of that reasoning to be even remotely clear and convincing. First, it is reasonable to assume that plaintiff's daily fish feeding involves little more than sprinkling a few flakes of fish food from a plastic container into an aquarium once (or even twice) a day for a very limited time period. It is not clear how being able to complete this task is inconsistent with plaintiff's testimony regarding his sitting, standing, walking, or lifting limitations or his symptoms, or, in light of the limited amount of time plaintiff spends on this daily activity, is otherwise transferable to a work setting where feeding fish is an option. Next, the ALJ's finding that plaintiff is able to "perform some multi-step tasks" because he can count change and "handl[e] a savings account," and that these activities are inconsistent with his subjective testimony regarding his symptoms or limitations, is equally puzzling. To the extent that the ALJ was attempting to refute plaintiff's claim that he has "[d]ifficulties with task completion" [see AR at 22], the ALJ failed to demonstrate that an ability to "perform some multi-step tasks" is equivalent to an ability to "complete" tasks, multi-step or otherwise. Finally, (although not hard to believe in light of the other two less than clear and convincing reasons suggested by the ALJ), the fact that the ALJ found that plaintiff's regular interaction with his mother when she comes over to visit him *twice a month* [AR at 207] constitutes an inconsistency between plaintiff's allegations regarding his symptoms and limitations and his reported daily activities, is not a clear and convincing reason for discounting plaintiff's testimony. Indeed, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise [which are arguably substantially more involved than the ones the ALJ relied on herein], does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be

disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989)).

In short, plaintiff's self-reported activities of feeding his fish, counting change and handling his savings account, and interacting with his mother two times a month, are not in the least inconsistent with his self-reported functional limitations of walking for no more than 15 minutes at one time, sitting for no more than 10 minutes at one time, and lifting no more than a gallon of milk.

Remand is warranted on this issue.

## B. MEDICAL OPINIONS

### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[8] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray, 554 F.3d at 1221, 1227); Turner, 613 F.3d at 1222. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a

---

[8] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**2.      Analysis**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting

the opinions of treating orthopedic surgeon Dr. Luna, and submits that the ALJ should have "developed the record in order to obtain an updated opinion on Plaintiff's physical limitations post-surgery." [JS at 10.]

### a. Dr. Luna

On February 29, 2015, two months prior to plaintiff's back surgery, plaintiff's treating orthopedic surgeon, Dr. Luna, completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire"). [AR at 322-24.] In the Questionnaire, Dr. Luna indicated that he was seeing plaintiff monthly. [AR at 322.] The ALJ summarized Dr. Luna's responses to the Questionnaire as follows:

> [H]e confirmed a diagnosis of degenerative spondylolisthesis at L4-L5 and noted that [plaintiff's] prognosis was "good." Dr. Luna then opined that [plaintiff] could lift and/or carry 20 pounds occasionally and less than 10 pounds frequently; stand and/or walk for four hours in an eight-hour workday; and sit for four hours in an eight-hour workday; with unscheduled breaks. He asserted that [plaintiff] could reach bilaterally for no more than 50% of an eight-hour workday[.] Dr. Luna stated that [plaintiff] could perform manipulative activities bilaterally for 80% of an eight-hour workday. He felt that [plaintiff] would be absent from work more than four times per month.

[AR at 26 (citations omitted).]

In her March 9, 2015, pre-surgical consultative examination, Dr. Safavi (whose examination found positive straight leg raising test results at 60 degrees on the right side, painful lumbar spine flexion and range of motion, and right-sided paraspinal muscle tenderness, and who noted that plaintiff ambulated with a "mildly antalgic gait" and that his "gait is not very consistent"), nevertheless found plaintiff capable of **medium exertional level work** -- lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking for up to six hours in an eight-hour workday; sitting without limitation in an eight-hour workday; frequently performing postural movements; and with no manipulative or environmental limitations. [AR at 26 (citing AR at 327-32).] The ALJ gave "significant weight" to the opinion of Dr. Safavi "insofar as it demonstrates that [plaintiff] can perform work at the sedentary exertional level." [Id.] The ALJ gave "little weight" to the post-surgical April 21, 2015, and June 24, 2015, opinions of the reviewing examiners who opined plaintiff could perform a range of light work. [AR at 27 (citations omitted).]

The ALJ also gave "little weight" to Dr. Luna's February 29, 2015, opinion:

> While the undersigned concurs [with Dr. Luna] that [plaintiff] can lift more than his assertions suggest, the Administrative Law Judge finds the functional limitations set forth by Dr. Luna to be mostly inconsistent with the relevant medical evidence of record, including reports documenting that he can ambulate effectively with a nonantalgic gait and postsurgical x-rays showing satisfactory alignment of the spine with intact hardware.

[Id. (citations omitted).] The ALJ noted that "[w]hile [plaintiff] experiences some neck and postsurgical back pain, there is no persistent, persuasive evidence in the record to indicate that he is unable to perform the full range of sedentary work." [Id.] He concluded that "[t]he record as a whole supports a finding that [plaintiff] would be further limited to the performance of the full range of sedentary work." [Id.]

The ALJ asserted the same reasons for discounting Dr. Luna's opinion as he did for discounting plaintiff's subjective symptom testimony [compare AR at 23 with AR at 27] -- reasons this Court already found were not clear and convincing reasons for discounting plaintiff's testimony. They fare no better as purportedly "specific and legitimate" reasons for discounting Dr. Luna's opinion in favor of the pre-surgical opinion of the consultative examiner who, one month prior to plaintiff's surgery, opined plaintiff was capable of medium exertional level work, standing and walking six out of eight hours, and sitting for eight hours. [AR at 331.]

Additionally, there are other records that support Dr. Luna's opinion even post-surgery. For instance, five months after surgery, plaintiff started treating with Darren Freeman, D.O., at the U.C. Riverside Pain Management Clinic, and continued to treat with him into 2017. [AR at 580-685, 704-07, 774-81.] At numerous visits, Dr. Freeman observed palpable tenderness along the cervical and lumbar spine, especially along the bilateral L5 level and the posterior iliac spine; tenderness along the bilateral sacroiliac joints; positive Kemp's test and positive Patricks' and Faber's tests bilaterally; positive straight leg raise at 70 degrees; diminished sensation along the left C5 dermatomal distribution; full range of motion in all extremities except with the lower back due to severe pain; and observations of an antalgic gait. [See, e.g., AR at 583, 586, 591, 595, 599, 603, 607, 611, 615, 618, 619, 623, 626, 627, 631, 634, 638, 641, 706, 781, 795, 803.] Dr. Freeman frequently reported plaintiff's need for a cane, and ultimately prescribed a wheelchair.

[See, e.g., AR at 583, 587, 591, 599, 603, 696, and others; see also AR at 812.] Dr. Freeman also noted that he was seeking preauthorization for and scheduling of numerous medial branch RF ablation sessions to bilateral L5, and numerous lateral branch blocks to S1-S2 and S3. [See, e.g., AR at 583, 587, 591, 595, 599, 603, 812, and others.] Additionally, the physical therapist who saw plaintiff in August 2015, four months after plaintiff's surgery, reported moderate problems in plaintiff's abilities to sit and stand, and noted that his "[s]ymptoms disrupt sitting [and standing] within 15 to 60 minutes"; she observed moderately reduced lumbar extension, tenderness in the lumbar spine, pain with all lumbar ranges of motion, paresthesia, and moderate weakness of the lower extremities at 3/5 strength; severely reduced lumbar flexion, lumbar sidebending, lumbar flexion, and ability to walk; and moderate sciatic nerve mobility deficits, as evidenced by a positive straight leg raise test at 40-54 degrees. [AR at 516-22.]

Based on the above, there is substantial objective evidence to support Dr. Luna's findings pre- and post-surgery. The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Luna's treating opinion. Remand is warranted on this issue.

### b. Duty to Develop the Post-Surgical Record

Plaintiff argues that the ALJ should have developed the post-surgical record "for an accurate representation of the effect of Plaintiff's surgery." [JS at 14.] He notes that although post-surgery evidence showed improvement shortly after surgery, that improvement was "followed by a gradual decline." [Id. (citing AR at 484-85).] He also notes that the surgery "did not relate to Plaintiff's cervical spine, which still showed disc dessication, disc bulging, spinal stenosis, and/or neural foraminal narrowing at C2-3 through C7-T1, moderate disc space narrowing, moderate narrowing of the right side of the canal, and severe right and moderate-to-severe left neural foraminal narrowing at the C5-C6 disc level." [Id. (citing AR at 484-85).] He notes that due to the focus on his lumbar spine, "no physician has rendered an opinion which accounts for his cervical impairments," thus leaving the ALJ "to interpret the technical medical findings supplied by the MRI results." [JS at 14-15.] Plaintiff argues that the ALJ's failure to give Dr. Luna's opinion

controlling weight, and his failure to further develop the post-surgical record, was not harmless because, as testified to by the VE, plaintiff would have been found disabled if Dr. Luna's opinion had been given greater weight. [JS at 15 (citing AR at 73-74).]

Defendant responds that it is plaintiff's burden to prove disability, and that "there was plenty of time for Plaintiff to submit evidence showing post-operative conditions" before the February 2017 hearing. [JS at 20.] Defendant notes that the ALJ even left the record open for two weeks after the hearing. [Id.]

As the matter is being remanded for other reasons, the Court will not decide this issue. On remand, however, the ALJ shall consider whether the record needs to be further developed with respect to plaintiff's post-surgery lumbar and cervical issues.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Luna, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Luna. Second, if the ALJ determines such is warranted, the ALJ shall further develop the record with respect to plaintiff's post-surgery lumbar and cervical impairments, and/or order a consultative examination or examinations, with the appropriate

specialist(s) being provided with all of plaintiff's medical records.  Third, the ALJ shall reassess the entire medical record, including, if applicable, the new consultative examination(s), and all other medical evidence of record relevant to plaintiff's claim for SSI.  The ALJ must explain the weight afforded to each medical opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects.  Fourth, because the ALJ failed to provide specific, clear and convincing  reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p,  shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[9]  See Shaibi v. Berryhill, 883 F.3d 1102, 1110 (9th Cir. 2017).

/
/
/
/
/
/
/
/
/
/
/
/

---

[9] Nothing herein is intended to disrupt the ALJ's step three finding that plaintiff is capable of performing *no more than* sedentary work, or his step four finding that plaintiff has no past relevant work.  [AR at 29.]

19

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 1, 2018

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE